**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| PLAINTIFF, | § § | |
| vs. | § § | |
| BRIAN A. BJORK, THE ESTATE OF JOEL DAVID SALINAS, J. DAVID GROUP OF COMPANIES, INC., J. DAVID FINANCIAL GROUP, LP, SELECT ASSET MANAGEMENT, LLC, SELECT ASSET CAPITAL MANAGEMENT, LLC, SELECT ASSET FUND I, LLC, AND SELECT ASSET PRIME INDEX FUND, LLC, | § § § § § § § § § § | CIVIL ACTION NO. 4:11 CV - 02830 |
| DEFENDANTS. | § | |

**RECEIVER'S UNOPPOSED MOTION TO APPROVE
SETTLEMENTS AND COMPROMISES OF CLAIMS AGAINST NET WINNERS**

TO THE HONORABLE KEITH P. ELLISON, UNITED STATES DISTRICT COURT:

Receiver, Steven A. Harr ("**Receiver**"), files this Motion to Approve Settlement and Compromise of Claims Against Net Winners (the "**Motion**") relating to the settlements the Receiver has reached and entered into with Buddy Meyer, individually ("**Meyer**") and Linda Salinas, individually ("**Salinas**"). While the settlements occurred independently of one another, for reasons of economy and their similar nature, the Receiver with this Motion respectfully seeks approval of each of the two settlements referenced and respectfully provides the following in support:

**I.
INTRODUCTION**

1.      On August 1, 2011, the Securities and Exchange Commission ("SEC") filed its Complaint against Defendants. In conjunction therewith, the SEC sought, and by Order

Appointing Receiver (the "Order"), the Court appointed, Steven A. Harr as the Receiver for Brian A. Bjork, the Estate of Joel David Salinas, J. David Group of Companies, Inc., J. David Financial Group, LP, Select Asset Management, LLC, Select Capital Management, LLC, Select Asset Fund I, LLC, and Select Asset Prime Index Fund, LLC (collectively, the "Receivership Entities").

2.      The Receiver was authorized to have complete and exclusive control, possession, and custody of all Receivership assets and Receivership records of Defendants.  Receivership Assets and Receivership Records were defined in the Order as "assets, monies, securities, properties, real and personal, tangible and intangible, of whatever kind and description, wherever located, and the legally recognized privileges (with regard to the entities), of the [Receivership Entities] and all entities they own or control . . ., and the books and records, client lists, account statements, financial and accounting documents, computers, computer hard drives, computer disks, internet exchange servers, telephones, personal digital devices, and other informational resources of or in possession of the [Receivership Entities] or issued by [Receivership Entities] and in possession of any agent or employee of the [Receivership Entities]."[1]

3.      The Receiver has been acting and fulfilling his duties as Receiver since his appointment and has conducted various investigations of the Receivership Entities with the intent to marshal the Receivership Assets for the benefit of the Receivership Entities' investors and creditors.  These efforts have also included the review of corporate records, forensic accounting analysis, records from various legal counsel from the Receivership Entities, and forensic tracing.  In conjunction with the Receiver's efforts, the Receiver has identified certain

---

[1] Order Appointing Receiver, ¶1.

**MOTION TO APPROVE SETTLEMENTS AND COMPROMISES OF CLAIMS AGAINST NET WINNERS**          PAGE 2

MHDocs 6070048_1 4856.15

individuals, including Meyer and Salinas (collectively, the "**Net Winners**"), whom he believes collected a net gain in the underlying fraudulent scheme; that is, the Net Winners took more money from the Receivership Entities than they actually paid into the Receivership Entities.[2]

4.      While the Receiver has no evidence or reason to believe that the Net Winners were complicit in the underlying fraudulent scheme, justice and equity mandates that the Receiver claw back any and all such proceeds.  As such, the Receiver has been engaged in such efforts.  With this Motion, the Receiver seeks approval of the settlement and compromise reached with both, Meyers and Salinas.

## II.
## RELEVANT FACTS

5.      The Receiver provided the general public notice on multiple occasions of his intention and efforts to identify potential claw back claims.  *See* Receiver's Interim Reports [Dkt. Nos. 155, 185, et al].  With the assistance of the Receiver's independent forensic accounting team, the Receiver compiled a list of individuals that likely qualify as net winners.  The Receiver has analyzed this list and has determined that it would not be prudent or a good use of the resources of the estate to assert claims against all of the net winners identified.  As a result, the Receiver has used his best judgment to target a collection of individuals that made significant gains.

6.      In or around April 2014, the Receiver sent communications to the Net Winners, along with others, informing them that after a thorough forensic review he had discovered that they were in fact significant net winners.  After being unable to resolve his claims informally,

---

[2] While the Receiver's records reveal that Salinas received more money from the Receivership Entities than she deposited, this money has been characterized in some instance as a loan and, in others, as fictitious profits earned on an investment.  Regardless of the characterization, these dollars still constitute net gains and the Receiver will not try to reach a proper characterization for purposes of this Motion as the result is effectively the same.

the Receiver filed suit against the Net Winners, amongst others, asserting claims of fraudulent transfer and constructive trust (the "**Net Winners Litigation**").[3]

7.      After filing the Net Winners Litigation, the Receiver was contacted by counsel for Meyer and Salinas, individually, to discuss resolution.

A.      SETTLEMENT WITH MEYER

8.      The Receiver's forensic investigation and accounting revealed that Meyer was a net winner in the amount of roughly $196,000.  When the Receiver shared his forensic accounting detail with Meyer, Meyer provided documents attempting to refute the extent of his net gains.  After several rounds of back-and-forth, the Receiver and Meyer were able to resolve the entirety of the Receiver's pending claims in exchange for $160,000, which is to be paid by Meyer in four equal payments with the first payment due on June 1, 2015 and the final payment due on or before December 1, 2015 ("**Meyer Settlement**").  A true and correct copy of the Meyer Settlement is attached hereto as Exhibit "A".

B.      SETTLEMENT WITH SALINAS

9.      Salinas is the ex-wife of Joel David Salinas.  After Salinas and Joel David Salinas were divorced, Joel David Salinas remarried Robbin Salinas.  Joel  David Salinas and Robbin Salinas were married at the time of Joel David Salinas' death.

10.      The Receiver's forensic investigation and accounting revealed that in August 2010, Salinas received a payment of $25,000 from the Receivership Entities.  While the Receiver originally believed these funds constituted fictitious profits, the Receiver has reason to believe

---

[3] On February 3, 2015, the Receiver filed Civil Action No. 4:15-CV-00306, styled *Steven A. Harr, In His Capacity as Court-Appointed Receiver for Brian A. Bjork, et. al v. Connie Elies, Herman Meyer, and Linda Salinas* in the United States District Court for the Southern District of Texas, Houston Division.  This action is currently pending before the Honorable Judge David Hittner.

that the funds may have been paid to Salinas as a loan.  Regardless, no portion of such funds have been returned to the Receivership Entities.

11.     After asserting his claims against Salinas, Salinas informed the Receiver that she lacked the financial wherewithal to satisfy the Receiver's demand.  In response, the Receiver requested that Salinas provide and attest to a detailed personal balance sheet.  After receipt, the Receiver determined that the lump sum funds available to Salinas were in generally exempt accounts.  Aside from these potentially exempt funds, Salinas has limited cash reserves available to satisfy any judgment.

12.     After several back-and-forth discussions and offers, the Receiver has agreed to settle all claims relating to the $25,000 payment received by Salinas for a single lump sum payment of $10,000 payable on or before April 24, 2015 ("**Salinas Settlement**").  A true and correct copy of the Salinas Settlement is attached hereto as Exhibit "B".

13.     In considering the costs associated with litigation, the sheltered nature of both Meyers and Salinas' funds, and Salinas' financial condition, the Receiver is of the opinion the Meyer Settlement and Salinas Settlement are fair and equitable and in the best interest of the Receivership Estate.

14.     The terms of the Meyer Settlement and Salinas Settlement have been negotiated and approved by both individuals.  Moreover, Meyer and Salinas have been made fully aware that any settlement is fully conditioned upon the approval from this Court.   If and when the requested approval is received, the Receiver will dismiss his claims against Meyer and Salinas that are pending in the Net Winners Lawsuit.  This will leave the Receiver just one more net winner claim left to be resolved.

## II.
## ARGUMENTS & AUTHORITIES

15.     In receiverships, federal courts have broad equitable powers enabling them to fashion appropriate ancillary remedies necessary to grant full relief.[4]  A settlement by a receiver in a federal equity receivership is within the receiver's broad discretion and should be approved if it is fair.[5]  "[R]eceivers benefit from the general presumption that district courts favor settlements."[6]  The District Court's determination of the fairness of a settlement by the Receiver is subject to the sound discretion of the Court and will be overturned only on a clear showing of abuse of discretion.[7]

16.     A receiver's authority to settle claims is inherent in the charge to an equity receiver to collect assets.  Specifically, since a court has the authority to authorize the receiver to collect assets, it must also be able to authorize the receiver to sue to collect any available assets. It naturally then follows, as a necessary corollary of the foregoing, that the receiver has the power, when so authorized by the court, to compromise claims either for or against the receivership and whether in suit or not in suit.[8]   Thus, settlements and compromise are a normal part of the process of a receivership.

---

[4] *See SEC v. Safety Fin. Serv., Inc.*, 674 F.2d 369, 372 (5th Cir. 1982); *SEC v. Manor Nursing Ctrs.*, 458 F.2d 1082, 1103-04 (2d. Cir. 1972).

[5] *Gordon v. Dadante*, 336 Fed. Appx. 540 (6th Cir. 2009); *SEC v. Credit Bancorp, Ltd.*, No. 99 Civ. 11395, 2002 WL 1792053 at *4-5 (S.D.N.Y. Aug. 2, 2002); *SEC v. Princeton Economic Int'l, Inc.*, No. 99 Civ. 9667, 2002 WL 206990 at *1 (S.D.N.Y. Feb. 8, 2002).

[6] *Sterling v. Stewart*, 158 F.3d 1199, 1202 (11th Cir. 1998).

[7] *Gordon v. Dadante*, 336 Fed. Appx. at 545 (holding that district court did not abuse its discretion in approving settlement agreement entered into by a receiver); *Sterling v. Stewart*, 158 F.3d at 1202 (quoting *Bennett v. Behring*, 131 F.2d 982, 986 (11th Cir. 1984)); *SEC v. Arkansas Loan and Thrift Corp.*, 427 F.2d 1171, 1172 (8th Cir. 1970) (no abuse of discretion in trial court's approval of receiver's settlement on fidelity bond claim).

[8] 3 Clark, Ralph Ewing, A Treatise on the Law and Practice of Receivers, § 770, p. 1424 (3d ed. 1992) (cited with approval in *SEC v. Credit Bancorp*, Ltd., 2002 WL 1792053 at *4 (S.D.N.Y. Aug. 2, 2002)).

17.     The Receiver believes that Meyer Settlement and the Salinas Settlement reached in regard to the Net Winners Litigation is in the best interest of the Receivership Estate when considering the totality of the circumstances.  As such, with the broad equitable authority possessed by the Court in these proceedings, the Receiver respectfully requests that the Court approve these settlements.

## IV.
## CONCLUSION

WHEREFORE, the Receiver prays that the Court approve the settlements referenced in this Motion and enter an Order in the form submitted or for substantially the same relief in such form as the Court may find just and proper.

DATED:  April 24, 2015                    Respectfully submitted,

By:/s/ *Sameer S. Karim*
      **Steven A. Harr**
      Texas Bar No. 09035600
      **MUNSCH HARDT KOPF & HARR, PC**
      700 Milam Street, Suite 2700
      Houston, Texas 77002
      (713) 222-4044 (telephone)
      (713) 222-4047 (telecopy)
      E-Mail: sharr@munsch.com

      **ATTORNEY IN CHARGE FOR RECEIVER**

**OF COUNSEL:**
**MUNSCH HARDT KOPF & HARR, PC**
700 Milam Street, Suite 2700
 Houston, Texas 77002

**Sameer S. Karim**
SDTX Bar No. 24076476
700 Milam Street, Suite 2700
Houston, Texas 77002
Tel:   (713) 2224050
Fax:  (713) 222-5850
skarim@munsch.com

## CERTIFICATE OF CONFERENCE

On April 24, 2015, I conferred with Tim McCole and he stated that the Securities and Exchange Commission is not opposed to the relief sought in this motion.

/s/ Sameer S. Karim
Sameer S. Karim

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was filed electronically with the Clerk via the CM/ECF system.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Houston, Texas, this 24th Day of April 2015.

/s/ Sameer S. Karim
Sameer S. Karim